2016 IL App (1st) 143757

FIRST DIVISION
December 29, 2016

No. 1-14-3757

| | | |
|---|---|---|
| 1411 NORTH STATE CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| | ) | Petition for Review of an |
| Petitioner, | ) | Order of the Illinois Property |
| | ) | Tax Appeal Board |
| v. | ) | |
| | ) | Property Tax Appeal Board |
| THE ILLINOIS PROPERTY TAX APPEAL BOARD | ) | Nos. 09-28335.001-R-3 to |
| and THE COOK COUNTY BOARD OF REVIEW, | ) | 09-28335.029-R-3 |
| | ) | |
| Respondents. | ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Harris concurred in the judgment and opinion.

## OPINION[1]

¶ 1    This is a direct appeal from a final decision of the Illinois Property Tax Appeal Board

(Appeal Board) ordering no change to the 2009 taxes assessed by the Cook County assessor and

certified by the Cook County board of review (board of review) for a 14-unit condominium

property located at 1411 North State Parkway in Chicago (Association property). The 1411

North State Condominium Association (Association or taxpayer) challenged the assessment,

---

[1]  An unpublished order was entered in this case pursuant to Illinois Supreme Court Rule 23 (eff. July 11, 2011) on October 31, 2016. We subsequently granted the taxpayer's motion to publish that decision as an opinion. To address concerns raised by the Appeal Board in opposition to publication we have modified paragraphs 10, 12, 15, 30, 38, 40-44, and 46-47 *infra*. These modifications do not change the result in this case but are intended to clarify that our holding does not apply broadly to evidentiary rulings made by administrative agencies. Nor is it intended to make substantive changes to Appeal Board procedures. Rather, it rests on the specific rules of the Illinois Property Tax Appeal Board and the manner in which they were applied in this case. Certain non-substantive changes have also been made throughout to conform to applicable style conventions.

which was based on a market value of over $20 million, contending that the true market value of the property in 2009 was only $13 million. The Association's appraiser, however, passed away before a hearing in this matter was held.

¶ 2    At the hearing, the hearing officer overruled the board of review's objection that, since the appraiser could not be cross-examined, the appraisal was inadmissible hearsay, and stated that the appraisal would be considered and given "the appropriate weight." However, in its written ruling issued after the hearing, the Appeal Board ruled that the death of the appraiser rendered the appraisal inadmissible. Without the appraisal, the Association lacked any admissible evidence to support its valuation of the property. Since the burden is on the taxpayer to prove by a preponderance of the evidence that an assessment should be reduced, the Appeal Board sustained the assessment certified by the board of review. For the reasons that follow, we reverse and remand this matter to the Appeal Board for a new hearing.

¶ 3                                      BACKGROUND

¶ 4                          A. Appeal Board Policies and Procedures

¶ 5    In Illinois counties with 3 million or more inhabitants, a general assessment of real property is made once every three years. 35 ILCS 200/9-220(b) (West 2008); 86 Ill. Adm. Code 1910.5(b)(12) (2007). Property taxes are determined based on an assessment of the fair cash value of the property, defined as "[t]he amount for which [the] property can be sold in the due course of business and trade, not under duress, between a willing buyer and a willing seller." 86 Ill. Adm. Code 1910.5(b)(5) (2007). In Cook County, a taxpayer or other interested party seeking to challenge a property valuation initially set by the Cook County assessor must appeal to the board of review, a quasi-judicial agency that conducts first-level reviews. Decisions of the board of review may then be challenged before the Appeal Board or, if the tax is paid under protest, in

the circuit court. 35 ILCS 200/23-5 (West 2010); 86 Ill. Adm. Code 1910.50(f)-(g) (2007).

¶ 6    The Property Tax Code charges the Appeal Board with establishing through its own rules an "informal procedure" for determining the correct assessment of property that is the subject of an appeal. 35 ILCS 200/16-180 (West 2010). "The procedure, to the extent that the [Appeal] Board considers practicable, shall eliminate formal rules of pleading, practice and evidence ***" *Id.* The Appeal Board's policies and procedures are set forth in title 86, part 1910 of the Administrative Code (Code). 86 Ill. Adm. Code 1910. According to its "Statement of Policy," the Appeal Board "shall determine the correct assessment *** of any parcel of real property which is the subject of an appeal, based upon facts, evidence, exhibits and briefs submitted to or elicited by the [Appeal] Board" (86 Ill. Adm. Code 1910.10(b) (1997)) and "revise the assessment of any particular parcel of real property when it finds such assessment to be in error" (86 Ill. Adm. Code 1910.10(d) (1997)).

¶ 7    A contesting party must set forth in its petition the assessment for the subject property that it considers to be correct, along with any supporting written or documentary evidence. 86 Ill. Adm. Code 1910.30(h), (k) (2007). Upon the filing of a petition, the county board of review then files its "Board of Review Notes on Appeal and all written and documentary evidence supporting the board of review's position." 86 Ill. Adm. Code 1910.40(a) (2007). The contesting party is given 30 days to submit rebuttal evidence. 86 Ill. Adm. Code 1910.66(a) (2007).

¶ 8    Proceedings before the Appeal Board are considered *de novo*; there is no presumption that an assessment certified by a local board of review is correct. 86 Ill. Adm. Code 1910.50(a) (2007). The contesting party has the burden of going forward (86 Ill. Adm. Code 1910.63(a) (2000)) and "must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property" (86 Ill. Adm. Code

1910.63(b) (2000)). Upon such a showing, the burden shifts to the county board of review to support its assessment. 86 Ill. Adm. Code 1910.63(c) (2000). The Appeal Board considers "only the evidence, exhibits and briefs submitted to it, and will not give any weight or consideration to *** submissions not timely filed or not specifically made a part of the record." 86 Ill. Adm. Code 1910.50(a) (2007).

¶ 9    "When market value is the basis of the appeal, the value of the subject property must be proved by a preponderance of the evidence." 86 Ill. Adm. Code 1910.63(e) (2000). Evidence of market value may consist of an appraisal or recent sale of the subject property; the cost of land and construction, if the date of construction is proximate to the assessment date; or documentation regarding three or more recent sales of comparable properties. 86 Ill. Adm. Code 1910.65(c)(1)-(4) (1997). When appraisal testimony is used to support the valuation asserted, it must "be given by a preparer of the documented appraisal whose signature appears thereon." 86 Ill. Adm. Code 1910.67(l) (2006).

¶ 10    Property tax challenges before the Appeal Board may be decided either based solely on the parties' written submissions or after an evidentiary hearing. 86 Ill. Adm. Code 1910.50(b) (2007); 86 Ill. Adm. Code 1910.67(a) (2006). "The [Appeal Board] may accept into the record all evidence, exhibits and briefs submitted by all interested parties and render a decision without holding a hearing." 86 Ill. Adm. Code 1910.50(b) (2007). On its own motion the Appeal Board may alternatively "order a hearing to be held at any time and place" and "shall" do so at the request of any party. 86 Ill. Adm. Code 1910.50(b) (2007); 86 Ill. Adm. Code 1910.67(b) (2006).

¶ 11    "Hearings may [be conducted by] less than a majority of the Members of the Board, and the Chairman may assign Members or Hearing Officers to hold hearings." 86 Ill. Adm. Code 1910.67(e) (2006). In any hearing, the Board or any of its designated Hearing officers "have full

authority over the conduct of a hearing," including the power to administer oaths, examine witnesses under oath, admit or exclude evidence, and ensure that the hearing is conducted in a fair and impartial manner. 86 Ill. Adm. Code 1910.67(h) (2006). The Appeal Board rules provide that "[e]ach hearing shall be conducted in a manner best calculated to conform to substantial justice." 86 Ill. Adm. Code 1910.92(a) (2006).

¶ 12    A party participating in a hearing before the Appeal Board "is entitled to introduce evidence that is otherwise proper and admissible without regard to whether that evidence has previously been introduced at a hearing before the board of review of the county." 86 Ill. Adm. Code 1910.50(a) (2014); 35 ILCS 200/16-180 (West 2014). However, documentary evidence may be introduced at a hearing only if it was timely submitted prior to the hearing, unless the Appeal Board waives the filing requirement or the hearing officer or Appeal Board specifically orders the evidence to be submitted. 86 Ill. Adm. Code 1910.67(k) (2006). The Appeal Board or its designated hearing officer "may exclude inadmissible evidence upon its own motion" and "will receive evidence that is material and relevant, and that would be commonly relied upon by reasonably prudent persons in the conduct of their affairs." 86 Ill. Adm. Code 1910.90(g) (2014); 86 Ill. Adm. Cod 1910.92(b) (2006). "[A]s witnesses complete their testimony, they are subject to cross-examination by the Hearing Officer and the other parties to the appeal" (86 Ill. Adm. Code 1910.90(c)(3) (2014)) and, if evidence is ruled inadmissible, the offering party may, upon a motion made at the hearing, make an offer of proof (86 Ill. Adm. Code 1910.90(f)(3) (2014)).

¶ 13    The rules regarding evidentiary objections at Appeal Board hearings are as follows. "When an objection is made to the admissibility of evidence or testimony during the hearing, the Hearing Officer may either sustain or overrule the objection *** or may reserve the ruling and permit the testimony and/or evidence into the record subject to the ruling of the [Appeal Board]

5

on the objection in its decision for the appeal." 86 Ill. Adm. Code 1910.90(f)(2) (2014).

¶ 14    The Appeal Board "may take official notice of decisions it has rendered, matters within its specialized knowledge and expertise, and all matters of which the Circuit Courts of this State may take judicial notice." 86 Ill. Adm. Code 1910.90(i) (2014).

¶ 15    Final decisions of the Appeal Board are made by a majority of its five members (86 Ill. Adm. Code 1910.10(a) (1997); 86 Ill. Adm. Code 1910.12(g) (2014); 86 Ill. Adm. Code 1910.50(e) (2014)) and have the effect of terminating the proceedings (86 Ill. Adm. Code 1910.50 (2014). Both the Property Tax Code and the Appeal Board's own rules require such decisions to be based upon "equity and the weight of the evidence" (86 Ill. Adm. Code 1910.50(c) (2014); 35 ILCS 200/16-185 (West 2010)).

¶ 16                                B. The Parties' Dispute

¶ 17    For the 2009 tax year, the Cook County assessor assessed property taxes on the Association property of $2,063,349, based on a market value of $20,633,490. The Association challenged the assessment before the board of review and the board of review found no change was warranted. On September 22, 2010, the Association appealed the board of review's decision to the Appeal Board.

¶ 18    The Association requested a hearing and attached to its petition, as its only documentary evidence, a 135-page appraisal report prepared on February 25, 2010, by Mr. Robert Schlitz, a certified appraiser and the president of SAS Appraisal, Inc. (SAS). In the appraisal, Mr. Schlitz used both traditional valuation methodologies and multiple regression analysis to arrive at a value, as of January 1, 2009, of $13 million for the 14 residential condo units, 14 deeded garage parking spaces, and 1 deeded outdoor parking space that comprised the Association property. The appraisal included raw sales data used by Mr. Schlitz relating to the sales of units within the

subject building and purportedly comparable buildings.

¶ 19    In response, the board of review submitted a form titled "Notes on Appeal," in which it declined a hearing and provided the Appeal Board with three pages of its internal calculations valuing the property at $21,466,038. The board of review's valuation was based on the sale of two of the building's condo units in 2008, less a standard deduction for personal property.

¶ 20    On January 30, 2012, the Appeal Board notified the parties that the filing period for the initial submission of evidence was closed and rebuttal evidence would be accepted for a period of 30 days. On February 14, 2012, it scheduled a hearing for March 25, 2014.

¶ 21    Mr. Schlitz passed away in May 2012.

¶ 22    On March 25, 2014, the hearing in this case proceeded as scheduled. The Appeal Board's hearing officer opened the hearing by stating: "By statute, the Board is to make a decision based on the equity and the weight of the evidence. The decision of the [Appeal Board] will be based on the evidence presented and made part of the record or on exhibits and briefs for which permission is granted on the record." At the hearing, the Association sought to rely on Mr. Schlitz's appraisal and to introduce the testimony of Mr. Michael Gilligan, vice president of SAS, to support Mr. Schlitz's methodology. The Association also asked the Appeal Board to take judicial notice of its own prior decisions regarding both the subject property and two other properties, in which it had rejected the methodology employed by the board of review in favor of Mr. Schlitz's methodologies, and of transcripts from two of those proceedings in which Mr. Schlitz testified about his methodologies. The Association pointed out that the Appeal Board's rules specifically allow it to take notice of its own prior decisions. 86 Ill. Adm. Code 1910.90(i) (2014). The Association further argued that it was irrelevant that Mr. Gilligan was not the author of the Association's appraisal where he was not being offered to provide testimony regarding the

value of the property but merely to establish Mr. Schlitz's date of death, to testify about the market conditions on January 1, 2009, and to rebut the board of review's valuation evidence.

¶ 23    The board of review objected to the admission of Mr. Schlitz's appraisal on hearsay grounds. It took the position that a written appraisal is admissible without witness testimony only where neither party requested a hearing and insisted that, even under a relaxed evidentiary standard, where a hearing is held, the board of review has a "fundamental right" to cross-examine the Association's appraiser. The board of review also objected to the Appeal Board taking judicial notice of its own prior decisions, arguing that they constituted improper opinion evidence and were irrelevant because they related to different tax years and in some cases different properties. Finally, the board of review objected to the testimony of Mr. Gilligan, arguing that it was not relevant because he was not the preparer of the appraisal relied on by the Association and had not prepared his own appraisal.

¶ 24    In response, the Association argued that Mr. Schlitz's appraisal was already a part of the record by virtue of its submission with the Association's petition; there was no rule prohibiting the consideration of an appraisal absent a testifying witness; Mr. Schlitz's death was irrelevant given that the Appeal Board could have made its decision without holding a hearing at all (86 Ill. Adm. Code 1910.50(b) (2007); 86 Ill. Adm. Code 1910.67(a) (2006)); and the Appeal Board could consider the appraisal because it was evidence "that would be commonly relied upon by reasonably prudent persons in the conduct of their affairs" (86 Ill. Adm. Code 1910.92(b) (2006)). According to the Association, exclusion of Mr. Schlitz's appraisal would not be in keeping with the notion that the formal rules of evidence are relaxed in Appeal Board proceedings in order to achieve substantial justice (35 ILCS 200/16-180 (West 2010); 86 Ill. Adm. Code 1910.92(a) (2006)).

¶ 25 The hearing officer sustained the board of review's objection to Mr. Gilligan's testimony, but overruled its objection with respect Mr. Schlitz's appraisal, ruling that the appraisal would be considered and given "the appropriate weight." The hearing officer also allowed the Association to introduce copies of the Appeal Board's prior decisions, indicating that these would likewise be given "the weight that [they] deserve[d]."

¶ 26 The Association presented Mr. Gilligan's testimony as an offer of proof. Mr. Gilligan first noted that the residential condominium market was "in flux and in a state of decline in 2009." He then stated that, in his opinion, a "multiple regression analysis is the best indication of value in properties like this." According to Mr. Gilligan, the board of review incorrectly valued the property by taking only two sales and applying them to the whole building with no adjustments for the unique characteristics of the individual condo units.

¶ 27 In a written decision issued on November 21, 2014, the Appeal Board concluded that no change in the assessed value of the property was warranted. The Appeal Board did not follow the hearing officer's ruling on the admissibility of Mr. Schlitz's appraisal but instead made what it labeled a "Conclusion of Law" that "a report, which is presented as evidence at trial or hearing and whose author has died, should be excluded as hearsay, unless, of course, there is a hearsay exception that applies." The Appeal Board considered the business records exception but found that it did not apply. Although the Appeal Board acknowledged that its "rules allow for informal procedures that eliminate formal rules of evidence," it concluded that the board of review had a fundamental right to cross-examine Mr. Schlitz.

¶ 28 The Appeal Board also refused to consider its own prior decisions, which it concluded were not relevant because they were introduced either to support the methodologies used by Mr. Schlitz—a moot point where Mr. Schlitz's appraisal was itself inadmissible—or to establish that

Mr. Schlitz consistently employed the same methodology, an issue bearing on his credibility that could not be fully tested absent the opportunity for cross-examination.

¶ 29    After excluding the appraisal and other cases, the only evidence remaining for the Appeal Board to consider was the raw sales data discussed in Mr. Schlitz's appraisal and the raw sales data submitted by the board of review. This data consisted of ten sales of condo units within the subject property occurring between 1987 and 2008, as well as six sales of apartment units which were intended to be converted to condo units occurring between 2007 and 2009. The Appeal Board concluded that the sales of the apartment units were too dissimilar to consider and all but two of the condo sales were "too remote in time to accurately depict the [subject property's] market value as of January 1, 2009." The Appeal Board found the two remaining sales were insufficient to reduce the assessment because the Appeal Board's rules provide that proof of market value may be based on "documentation of not fewer than three recent sales of suggested comparable properties." 86 Ill. Adm. Code 1910.65(c)(4) (1997).

¶ 30    By excluding the appraisal and declining to take judicial notice of its prior decisions, the Appeal Board refused to consider the key evidence presented by the Association. The Appeal Board thus concluded that the Association failed to prove by a preponderance of the evidence that the property was overvalued and ruled that a reduction in the assessment for the 2009 tax year was not warranted. The Appeal Board did not reopen the hearing, schedule a new hearing, or provide any other opportunity for the Association to present further valuation evidence.

¶ 31                                JURISDICTION

¶ 32    The Appeal Board entered its final order in this matter on November 21, 2014 and the Association timely filed its petition for review on December 15, 2014. Where, as here, a challenging party seeks a change in the assessed value of the property in question of $300,000 or

10

more, a final order of the Appeal Board may be appealed directly to the appellate court for the district in which the property is situated. 35 ILCS 200/16-195 (West 2014). Accordingly, we have jurisdiction over this matter pursuant to Illinois Supreme Court Rule 335 (Ill. S. Ct. R. 335 (eff. Feb. 1, 1994), section 16-195 of the Property Tax Code (35 ILCS 200/16-195 (West 2014)), and section 3-113 of the Code of Civil Procedure (735 ILCS 5/3-113 (West 2014)).

¶ 33                                      ANALYSIS

¶ 34     On appeal, the Association's primary contention is that the Appeal Board erred, as a matter of law, in excluding Mr. Schlitz's appraisal as hearsay. The Association stresses the Appeal Board's relaxed evidentiary standards. According to the Association, the Appeal Board's determination that the board of review had a fundamental right to cross-examine the appraiser cannot be squared with the fact that the Appeal Board could clearly have decided the case based on the submitted appraisal if no hearing had been held. The Association argues the appraisal is reliable hearsay authored by a well-known appraiser whose methods have been assessed and found to be reliable in other cases and that the legal authority excluding hearsay in administrative hearings that was relied on by the Appeal Board in this case does not apply to property tax administrative appeals.

¶ 35     The Association also faults the Appeal Board both for refusing to allow Mr. Gilligan to testify about the superiority of the methodologies used by Mr. Schlitz and for failing to consider the Appeal Board's own prior decisions, in which it favored the methodology used by Mr. Schlitz over that used by the board of review. The Association does not contend that the sales data relied on by Mr. Schlitz was alone sufficient evidence to meet its burden of proof.

¶ 36     The Association argues that the procedures used by the Appeal Board are at odds with provisions of the Property Tax Code and the Appeal Board's rules directing it to utilize informal

procedures to arrive at equitable property value assessments. The Association asks this court to remand with directions for the Appeal Board to enter an order adopting the Association's proposed property value or, in the alternative, for the Association to be granted a new hearing and allowed to introduce a new appraisal.

¶ 37    In response, the board of review and Appeal Board argue that the Appeal Board's rulings were proper because, even under the informal Appeal Board procedures, parties have a fundamental right to cross-examine adverse witnesses. The Appeal Board asks us to review this evidentiary ruling under an abuse of discretion standard. When presented with the death of its appraiser, the Appeal Board argues that the Association should have withdrawn its request for a hearing and asked for the matter to be decided on the record or sought a continuance to obtain another appraisal, as is permitted by section 1910.67 of the Code (86 Ill. Adm. Code 1910.67(i) (2006) ("[c]ontinuances shall be granted for good cause shown" such as "the serious illness or death of a witness or party")). According to the Appeal Board and board of review, Mr. Gilligan's testimony was properly excluded because the Appeal Board's rules specifically provide that only the preparer of an appraisal may testify at a hearing. Both also insist that the Appeal Board's prior decisions were also properly excluded because the fact that the deceased appraiser's methodology was accepted for earlier tax years would not establish that the methodology was performed consistently or accurately for 2009 and thus was no substitute for cross-examination.

¶ 38    We need not resolve the parties' dispute over the applicable standard of review on the Appeal Board's evidentiary ruling or whether that ruling was correct. We reverse because, even if we were to defer to the Appeal Board's exclusion of the Association's appraisal as inadmissible hearsay, the manner and timing of the Appeal Board's decision to reverse the

hearing officer's evidentiary ruling—coming as it did after the hearing was concluded, when the Association had no reason to expect it, and when the Association was given no opportunity to present other evidence—resulted in a hearing that was not "conducted in a manner best calculated to conform to substantial justice" (86 Ill. Adm. Code 1910.92(a) (2006)).

¶ 39    The Appeal Board does not dispute that it was required to follow its own procedural rules. Rules adopted by an administrative agency pursuant to statutory authority "have the force of law and the administrative agency is bound by the rules." *Department of Corrections v. Illinois Civil Service Comm'n*, 187 Ill. App. 3d 304, 308 (1989). Although an agency's interpretations of its own rules are afforded some deference, we are not bound by them. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03 (1989); see also *People ex rel. Illinois Educational Labor Relations Board v. Oregon Community Unit School District 220*, 233 Ill. App. 3d 582, 586 (1992) (holding the circuit court did not err in interpreting an agency's order differently than the agency because "courts are to exercise independent review of an agency's determination of legal questions, and, while deference will be accorded to the extent possible, the agency's resolution may not stand if it is erroneous"). We will overrule such interpretations if they are "clearly erroneous, arbitrary[,] or unreasonable." *Kinsella v. Board of Education of City of Chicago*, 2015 IL App (1st) 132694, ¶ 26.

¶ 40    Here, the Appeal Board's rules did not expressly state that it could overrule an evidentiary ruling made by the hearing officer. The plain language of section 1910.90 of the Code states that, "[w]hen an objection is made to the admissibility of evidence or testimony during the hearing, the Hearing Officer may *either* sustain or overrule the objection ***, *or* may reserve the ruling and permit the testimony and/or evidence into the record subject to the ruling of the [Appeal Board] on the objection in its decision for the appeal." (Emphasis added.) 86 Ill.

Adm. Code 1910.90(f)(2) (2014). The hearing officer in this case did not reserve ruling on the admissibility of the appraisal. Instead, she overruled the board of review's hearsay objection and admitted the Association's appraisal into evidence. The Appeal Board then reversed that ruling without any notice to the Association that it would do so. Nothing in the applicable rules indicated to the Association that this was a possible outcome. Under these circumstances, the Association understandably assumed that the Appeal Board would consider the appraisal. Because the Association had no notice that the Appeal Board could or would overrule the hearing officer, the Association had no opportunity or reason to even try to present a new appraisal or other evidence of its proposed valuation before the matter was presented to the Appeal Board.

¶ 41    At oral argument, counsel for the Appeal Board pointed out that the rules make it clear that the Appeal Board is not required to adopt a hearing officer's recommendations. Section 1910.67 of the Code, however, merely provides that a hearing officer may "report his *findings* for affirmation or rejection by the [Appeal] Board." (Emphasis added.) 86 Ill. Adm. Code 1910.67(e) (2006). "Findings" in this context appears to refer to determinations on the merits, not evidentiary rulings. See *Carrao v. Board of Education*, 46 Ill. App. 3d 33, 39 (1977) ("A decision by an administrative agency must contain findings to make possible judicial review of the agency's decision, and those findings are determinations from the evidence of a case concerning the facts averred by one party and denied by the other."). The rule did not alert the Association to the possibility that the Appeal Board would refuse to consider evidence the Hearing Officer deemed admissible.

¶ 42    Counsel also directed our attention to a provision of that same section providing that "[t]he [Appeal] Board or its designated Hearing Officer" shall have the power "[t]o admit or

14

exclude testimony or other evidence into the record" (86 Ill. Adm. Code 1910.67(h)(1)(B) (2006)), as well as a provision of section 1910.90 stating that "[t]he [Appeal Board] or its designated Hearing Officer may exclude inadmissible evidence upon its own motion" (86 Ill. Adm. Code 1910.90(g) (2014)). However, the rules provide that a hearing may be held by the Appeal Board, by "less than a majority of the Members of the Board" and by "Members [of the Board] or Hearing Officers." 86 Ill. Adm Code 1910.67(e) (2006). We read these provisions to mean that either the Appeal Board, some members of the Board or a hearing officer—depending on who presides over the hearing—may make evidentiary rulings; not that the Appeal Board retains this power when a hearing officer has been appointed to conduct the hearing and has already ruled on the evidence in question, without reserving the question of admissibility for later determination by the Appeal Board. If the Appeal Board retains the ability to overrule its hearing officers' evidentiary rulings, we cannot say that anything in the Appeal Board's rules put the Association on notice of this fact.

¶ 43    Nor can we say that in this case the exercise of such power was done in a manner that comported with other Appeal Board Rules. Those rules expressly require that "[e]ach hearing shall be conducted in a manner best calculated to conform to substantial justice (86 Ill. Adm. Code 1910.92(a) (2006)). Both the rules and the Property Tax Code itself furthermore require decisions of the Appeal Board to be based on "equity and the weight of the evidence" (86 Ill. Adm. Code 1910.50(c) (2014); 35 ILCS 200/16-185 (West 2010)). In the context of this case, the procedures employed were not fair and equitable.

¶ 44    The Appeal Board acknowledges that its rules provide no mechanism for a taxpayer to seek reconsideration of a final decision on the merits, which has the effect of terminating the proceedings. 86 Ill. Adm. Code 1910.50(d) (2014). Thus, there was nothing the Association

could do to present other valuation evidence once the Appeal Board rendered its decision. Although a final decision of the Appeal Board terminates the proceedings, we do not see anything in the rules that would have precluded the Appeal Board—once it decided to overrule the hearing officer's evidentiary ruling in this case—from postponing its final decision and reopening the hearing or scheduling and continuing a new hearing to allow the Association to put on additional evidence.

¶ 45    We reject the Appeal Board's argument that the Association should have taken steps to protect itself at the hearing. Once the hearing officer overruled the Appeal Board's objection and admitted the appraisal, the Association had no reason to suspect that it needed to safeguard against the reversal of that ruling by continuing the hearing to secure a replacement appraisal, presenting other evidence to support its reduction in value, or suggesting some exception to the rule against hearsay. We likewise reject the Appeal Board's argument that the admissibility of the appraisal was "always a live issue" because the hearing officer's comment that it would be given "appropriate weight" could have meant that it would be given no weight at all. The hearing officer clearly overruled the board of review's hearsay objection and her statement indicated that the appraisal would at least be considered, a ruling completely at odds with the Appeal Board's final order, which held that "the appraisal [wa]s excluded as hearsay, and w[ould] not be considered in th[e] appeal."

¶ 46    We also reject the argument that Appeal Board's ruling was proper because the Association should never have gone to the hearing expecting its appraisal to be admissible. Although, in hindsight, it would have been prudent for the Association to alert the board of review to Mr. Schlitz's death and inquire if this would present any problem, we cannot say that anything in the Appeal Board rules put the Association on notice that it needed to take such

action prior to the board of review making its objection at the hearing. The documentary evidence included with the parties' initial submissions would have been the basis for the Appeal Board's decision if no hearing had been held. 86 Ill. Adm. Code 1910.50(b) (2007); 86 Ill. Adm. Code 1910.67(a) (2006). The appraisal was part of that documentary evidence. The rules also provide for cross-examination only of testifying witness. 86 Ill. Adm. Code 1910.90(c)(3) (2014) ("as witnesses complete their testimony, they are subject to cross-examination by the Hearing Officer and the other parties to the appeal"). The Association was obviously not planning to have Mr. Schlitz testify so there was no reason for it to have anticipated cross-examination. And although we agree with the Appeal Board that the rules may "contemplate" testimony from an appraiser, they do not require it. See 86 Ill. Adm. Code 1910.67(l) (2006) (setting forth requirements for the acceptance of appraisal testimony at a hearing). Going into the hearing, the Association could reasonably have believed that its appraisal was already a part of the record and foreseen no problem with the inability to cross-examine Mr. Schlitz where he would not even be testifying. If anything, the board of review's response to the Association's petition indicated that it was not interested in cross-examining Mr. Schlitz. Next to the question "Hearing requested?" on the "Notes on Appeal" form it submitted, the board of review clearly indicated "no." Under these circumstances, it was not unreasonable for the Association to conclude that the board of review would not object to the appraisal on the grounds that Mr. Schlitz, who would not be testifying, was not available for cross-examination.

¶ 47    In short, while we do not need to decide whether the appraisal was properly excluded in this case, prior to the hearing the Association surely had a basis to believe that the appraisal would come into evidence. Then, when the hearing officer overruled the board of review's objections and told the parties the appraisal would be considered, the Association certainly had

every reason to believe that it could rely on the appraisal to meet its burden of proof. When, following all of that, the Appeal Board excluded the appraisal and gave the Association no opportunity to present other evidence, it violated its own rule requiring that "[e]ach hearing shall be conducted in a manner best calculated to conform to substantial justice" (86 Ill. Adm. Code 1910.92(a) (2006)). Fairness and the Appeal Board's own rules dictate that the Association be given an opportunity to attempt to prove to the Appeal Board that the board of review's valuation was too high.

¶ 48    The other rulings of the Appeal Board, excluding Mr. Gilligan's testimony and declining to take judicial notice of prior Appeal Board decisions involving appraisals by Mr. Schlitz, were tied to its ruling to exclude Mr. Schlitz's appraisal. This other excluded evidence was offered primarily as support for Mr. Schlitz's methodologies and to enhance his credibility as an appraiser. Where Mr. Schlitz's opinions themselves were excluded, we agree that his credibility was no longer relevant. This evidence might still have been relevant to rebut the board of review's methodology, but for that purpose its exclusion would have made no difference to the outcome of the case. No matter how much the Association undermined the board of review's valuation, it was still the Association's burden to affirmatively prove by a preponderance of the evidence that its valuation was correct. Without Mr. Schlitz's appraisal, the Association simply could not meet this burden. On remand, the Association will have the opportunity to submit a new appraisal and these issues are unlikely to recur, so we need not opine on these other rulings.

¶ 49                                    CONCLUSION

¶ 50    Under the circumstances of this case, the Appeal Board's reversal of its hearing officer's evidentiary ruling prevented the hearing from being "conducted in a manner best calculated to conform to substantial justice" (86 Ill. Adm. Code 1910.92(a) (2006)) and resulted in a decision

not "based on equity and the weight of the evidence" (86 Ill. Adm. Code 1910.50(c) (2014); 35 ILCS 200/16-185 (West 2010)). Accordingly, we reverse the Appeal Board's November 21, 2014, order and remand for proceedings consistent with this order. On remand, the proofs should be reopened to permit the Association to obtain and submit a new appraisal or such other evidence as it may rely on to establish the value of the subject property, and a new hearing should be held.

¶ 51    Reversed and remanded with directions.